.FIRST  NATIONAL  BANK  OF  PAWTUCKET  *vs.*  HARRIET  M. LITTLEFIELD *et al.,* Ex'rs.

JULY 3, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)   *Bills and Notes.   Renewals.   Banks.   Ultra Vires.*

The X. National Bank held two notes of the Y. Company, for $13,000 and $17,000.   The bank was placed in voluntary liquidation, and after the vote for liquidation was passed  the stockholders sold the whole capital stock to the Z. Trust Company, and the new and sole stockholder took over the deposit accounts, but did not take over the two notes in question.   Thereafter the bank did not make new loans or discount paper, except renewals.

The business of the trust company and the winding up of the bank were conducted in the rooms and by the officers of the former.   At the maturity of the notes, respectively, the treasurer of the Y. Company, who was also president of the bank, informed the cashier of the bank, who was also manager of the trust company, that he wished to renew the notes.   This was done by the treasurer of the Y. Company carrying to the bank the new notes and a check drawn by the Y. Company on the trust company for the amount of the note in each case; he received back the old note stamped "Paid" and on the cash book of the bank cash was charged note of the Y. Company paid $17,000 (in the first case) interest received, discount, note Y. Company $288.07, and cash was  credited  with note of Y. Co., discounted $17,000.

On the books of the trust company the check was deposited to the credit of the bank and charged against the account of the Y. Company. At same time a debit slip for $16,711.93, the difference between face of new note and the discount, was lodged with the trust company, and the amount of this slip credited to the deposit account of the Y. Company and charged against the deposit account of the bank. The result of this was to decrease the deposit account of the Y. Company and increase the deposit account of the bank by the sum of the discount:—

*Held,* that the old notes were equitably the property of the trust company, although not taken over by it at the time, and the making of the new loan to the Y. Company was the act of the trust company; but even if the act of the bank, it was valid as an exercise of power assented to by its sole stockholder.

*Held,* further, following *Merriman* v. *Social Mfg. Co.,* 12 R. I. 175, that the transaction was a new loan, and the new notes were not renewals of the former.

BILL IN EQUITY to establish stockholders' liability. Heard on bill, answer, and proof, upon certification from the Superior Court. Bill dismissed.

DUBOIS, J. This is a suit in equity brought to enforce stockholders' liability, under Gen. Laws, cap. 180, § 11, and certified by the Superior Court to this court for determination under the provisions of the court and practice act, section 338.

Heard upon bill, answer, and proofs.

The complainant is a judgment creditor of the Cumberland Mills Company, a Rhode Island corporation established in the town of Cumberland, and the respondents are the executors of the will of George L. Littlefield, late of Pawtucket, deceased.

The liability which the complainant seeks to enforce in this proceeding arises out of the failure to file certificates showing the financial condition of the corporation in the years 1898 and 1899. The judgment in favor of the complainant against the corporation is based on notes made by the corporation, April 24, 1900, and July 5, 1900. These notes, the complainant claims, were given in renewal of notes made by the corporation, October 24, 1899, and January 5, 1900, both prior to the filing of the certificate.

The following material facts have been established:

The Cumberland Mills Company is a manufacturing corporation, organized under the laws of Rhode Island in 1866; its manufactory has always been established in the town of

Cumberland; and it and its stockholders are subject to the laws of the State relating to manufacturing corporations and their stockholders.

George L. Littlefield, the defendant's testator, prior to June 25, 1898, and thence continuously to the time of his death in 1902, owned 275 shares, of the par value of $50 each, of the capital stock of the Cumberland Mills Company, all of which were paid up to their par value.

In 1898 the law required the Cumberland Mills Company to file in the office of the town clerk of Cumberland, annually on or before February 15, a certificate, signed by a majority of the directors, truly stating the amount of its capital stock actually paid in, the value as last assessed for a town tax of its real estate, the value of its personal assets, and the amount of its debts or liabilities on the thirty-first day of December of the year next preceding. The law further provided that, in the event of failure of the company so to do, all the stockholders should be jointly and severally liable for all the debts of the company then existing, and for all that should be contracted before such notice should be given; and that such liability should be limited to the shares of such members paid up to the par value thereof, and in an additional amount up to, but not exceeding, the par value of said shares. General Laws, cap. 180, §§ 11, 12, and 13.

This law was repealed March 28, 1901, but with a saving clause that "no such repeal shall affect any liability existing at the time of the passage of this act." Pub. Laws, cap. 839, §§ 1, 2, and 4.

The Cumberland Mills Company failed to file the required certificate in 1898, and also failed to file it in 1899. But on February 17, 1900, the company filed the required certificate for that year, showing the condition of the company, December 31, 1899.

From some time prior to 1898, to some time subsequent to 1900 the late Olney Arnold, of Pawtucket, was president of the First National Bank, of Pawtucket, complainant, and treasurer of the Cumberland Mills Company. Earl S. Binford was discount clerk of the plaintiff from 1865 to 1900, and kept

the discount book. This book shows the following entries: July 5, 1898, a six months note of the Cumberland Mills Company for $13,000, due January 5, 1899, interest, $332.23; net of note, $12,667.77. January 5, 1899, a six months note of the same company for $13,000, due July 5, 1899, interest $326.81; net of note $12,673.19. July 5, 1899, a six months note of the same company for $13,000, due January 5, 1900, interest, $332.23; net of note, $12,667.77. January 5, 1900, a six months note of the same company for $13,000, due July 5, 1900, interest, $390; net of note $12,610. October 24, 1898, a six months note of the Cumberland Mills Company for $17,000, due April 24, 1899, interest, $429.73; net of note, $16,570.27. April 24, 1899, a six months note of the same company for $17,000, due October 24, 1899, interest, $432.08; net of note, $16,567.92. October 24, 1899, a six months note of the same company for $17,000, due April 24, 1900, interest, $429.72; net of note, $16,570.28.

Mr. Binford testified that probably, and as far as he knew, the $13,000 notes of January 5, and July 5, in the year 1899, and the one of January 5, 1900, and the $17,000 notes of April 24 and October 24, in the year 1899, were given to take up the previous notes for the same amounts, falling due on those respective dates. And he also testified that his connection with the First National Bank ceased on February 14, 1900. William H. Park has been cashier of the complainant since 1865. In the middle of February, 1900, he became also manager of the Pawtucket branch of the Industrial Trust Company, and has held both offices since that date.

Mr. Park testified that on March 8, 1900, at a special meeting of the stockholders of the complainant, it was "unanimously voted that the First National Bank of Pawtucket, R. I., be placed in voluntary liquidation, under the provisions of sections 5220 and 5221, United States Revised Statutes, to take effect March 8, 1900."

Rev. Stats. U. S., Secs. 5220, 5221, 5222, and 5223, read as follows:

"SEC. 5220. Any association may go into liquidation, and

be closed by the vote of its shareholders owning two-thirds of its stock.

"SEC. 5221.   Whenever a vote is taken to go into liquidation it shall be the duty of the board of directors to cause notice of this fact to be certified, under the seal of the association, by its president or cashier, to the Comptroller of the Currency, and publication thereof to be made for a period of two months in a newspaper published in the city of New York, and also in a newspaper published in the city or town in which the association is located, or if no newspaper is there published, then in the newspaper published nearest thereto, that the association is closing up its affairs, and notifying the holders of its notes and other creditors to present the notes and other claims against the association for payment.

"SEC. 5222.   Within six months from the date of the vote to go into liquidation, the association shall deposit with the treasurer of the United States, lawful money of the United States sufficient to redeem all its outstanding circulation.   The treasurer shall execute duplicate receipts for money thus deposited, and deliver one to the association and the other to the comptroller of the currency, stating the amount received by him, and the purpose for which it has been received; and the money shall be paid into the treasury of the United States, and placed to the credit of such association upon redemption account.

"SEC. 5223.   An association which is in good faith winding up its business for the purpose of consolidating with another association shall not be required to deposit lawful money for its outstanding circulation; but its assets, and liabilities shall be reported by the association with which it is in process of consolidation."

(1)    Mr. Park also testified that at the stockholders' meeting of March 8, 1900, the following resolution was unanimously adopted: "Whereas, it has been this day voted that this bank be placed in voluntary liquidation under the provisions of sections 5220 and 5221, of the Revised Statutes of the United States, and whereas, this bank desires for the purposes of such liquidation to convert its assets into cash and to sell, assign,

transfer, and convey all the real estate and personal property other than cash now held and owned by it, it is now therefore voted that Edward L. Freeman and Darius L. Goff, or in the event of the decease of either, then the survivor of them, be and they are hereby authorized and empowered to sell, assign, transfer, and convey upon such consideration in cash as they may deem advisable, any and all of the property, real or personal, other than cash, now belonging to said bank, and to receive the purchase price thereof, and to receipt in the name and in behalf of said bank for the proceeds of such sales, and to make, execute, acknowledge, and deliver in the name of said bank good and effectual assignments, transfers, and convey-ances of any property so sold, assigned, transferred or con-veyed."

He further testified that at the time of this meeting the cap-ital stock of the complainant consisted of 3,000 shares of the par value of $100 each, whereof 2,591 were represented at the meeting. And also that after the vote for liquidation was passed, and prior to April 26, 1900, the stockholders sold the whole 3,000 shares to the Industrial Trust Company, for $300,000; and that the new and sole stockholder took over the deposit accounts of the plaintiff, and certain notes that they considered good beyond question, but did not take over the Cumberland Mill's notes of October 24, 1899, and January 5, 1900, for $17,000 and $13,000, respectively, and that these notes remained the property of the complainant. He further testified that after the vote of March 8, 1900, the plaintiff did not make new loans or discount any new paper, nothing except renewals, and that said complainant bank is still in process of liquidation.

The purpose and object of the stockholders of the complain-ant in passing the vote of March 8, 1900, viewed in the light of subsequent events, was to wind up its business for the purpose of selling out to the Industrial Trust Company, as was after-wards done. For the convenience of the Industrial Trust Com-pany, Pawtucket branch, which had become the holder of all the shares of stock of the First National Bank of Pawtucket, its own business, and the winding-up business of the latter cor-

poration, was conducted in Pawtucket, in the rooms and by the officers of the former.

In other words, the winding-up business of the complainant was controlled and directed by the Industrial Trust Company, Pawtucket branch.

On the 24th day of April, 1900, the time of the maturity of the $17,000 note, dated October 24, 1899, Mr. Olney Arnold, treasurer of the Cumberland Mills Company and president of the First National Bank, informed Mr. Park, the cashier of the First National Bank and manager of the Industrial Trust Company, Pawtucket branch, that he wished to renew that note. In consequence of that request Mr. Park directed the discount clerk to renew it. This was accomplished in the manner following:

On the 26th of April, 1900, Mr. Arnold carried into the bank the note for $17,000 at four months, dated April 24, 1900, and a check drawn by the Cumberland Mills on the Pawtucket branch of Industrial Trust Company, for $17,000, to the order of note, and handed them to the cashier, who handed them to the discount clerk, directing him generally to make the proper entries for renewal. Mr. Arnold received the note maturing April 24, 1900, stamped "Paid." The entries were as follows: On the cash book of the First National Bank cash was charged note of the Cumberland Mills Company paid, $17,000; interest received, discount, note Cumberland Mills Company, $288.07; and cash was credited with the note of the Cumberland Mills Company discounted, $17,000. On the books of Industrial Trust Company entries were made showing the following procedure: The check was deposited to the credit of First National Bank, and charged against the account of Cumberland Mills. At the same time a "debit slip" for $16,711.93, the difference between the face of the new note and the discount, was lodged with the trust company, and the amount of this "debit slip" credited to the deposit account of the Cumberland Mills and charged against the deposit account of the First National Bank. The office of the First National Bank was in the banking rooms of Industrial Trust Company, the cashier of the First National Bank was the manager of the Pawtucket branch of the trust

company, and the result of the transaction was to decrease the deposit account of Cumberland Mills and increase the deposit account of the First National Bank by the sum of $288.07, the amount of the discount or interest on the note.

July 5, 1900, the time of maturity of the $13,000 note, dated January 5, 1900, Mr. Arnold again informed the cashier of the First National Bank that it was necessary to renew that note, and at the same time handed him a new note for $13,000, dated July 5, 1900, and a check drawn by the Cumberland Mills Company on Industrial Trust Company, Pawtucket branch, to the order of note, for $13,000. The check and note were handed by the cashier to the discount clerk, who was instructed to make the proper entries for the renewal of the $13,000 note maturing that day. The same course was taken with respect to that note as had been taken with respect to the $17,000 note which matured the 24th day of the preceding April.

No cash passed as a part of these transactions. Amounts equal to the interest on the note were transferred from the deposit account of the Cumberland Mills with Industrial Trust Company to the deposit account of First National Bank with Industrial Trust Company.

On March 19, 1902, George L. Littlefield died, leaving a will whereof the defendants qualified as executors, and on September 17, 1902, within six months from the date of the first advertisement by the respondents of the notice of their qualification, the complainant filed in the office of the probate clerk of Pawtucket a statement of its claim against the estate of George L. Littlefield, and the claim was disallowed.

Prior to the filing of the bill of complaint the complainant recovered judgment against the Cumberland Mills Company, in an action founded upon the $17,000 note of April 24, 1900, and the $13,000 note of July 5, 1900, whereon execution was returned unsatisfied.

After the filing of the bill of complaint the complainant received from the assignee of the Cumberland Mills Company, $14,264.55 on account of the judgment.

The complainant claims that the question of liability resolves itself into the question whether or not the transactions of April

24 and July 5, 1900, under the circumstances, amounted to a payment of the notes maturing on those days, respectively, and the creation of a new indebtedness of the Cumberland Mills Company, or amounted to a renewal and continuance of an existing indebtedness; that if the indebtedness evidenced by the notes was an indebtedness created on the day of the dates of those notes, it was created after the Cumberland Mills Company had filed a statutory certificate which would relieve its stockholders from liability; that if, on the other hand, the indebtedness evidenced by the notes was but a continuance of the indebtedness evidenced by the notes in renewal of which they were given, respectively, then the indebtedness so represented by the notes was an indebtedness which was in existence February 15, 1900, and for which the stockholders are liable. And argues, first, that the transactions of April 24 and July 5, 1900, did not extinguish the then existing indebtedness of the Cumberland Mills, but simply continued it, and that the question is,—"*What did the parties intend?*"

The complainant admits that the transactions in the case at bar were in effect the same as those set forth in reference to notes held by certain banks mentioned in *Merriman* v. *Social Mfg. Co.*, 12 R. I. 175, 180; that it was practically the surrender of the maturing note marked "Paid" upon the receipt of a check, the discounting of a new note, and crediting the proceeds of the discount to the holder on the books of the bank, that the additional entries in this case were necessitated by the fact that the complainant bank was in liquidation, and not transacting a banking business, and that the debtors as well as the complainant were depositors in another banking institution; and claims that the facts in the case at bar differ from the facts stated in *Merriman* v. *Social Mfg. Co.*, *supra*, in two important particulars:

(1) In this case the intention of the parties was clearly and definitely expressed by the declarations of the treasurer of the Cumberland Mills, at the times when the new notes were given, that they were given in renewal of the maturing notes.

(2) The representatives of both parties to the transactions

were fully aware that the bank had ceased to transact a banking business and was no longer in position to loan money.

And the complainant argues, secondly, that the action of the cashier and the discount clerk, in so far as they attempted, if they did, to extinguish the existing indebtedness by accepting the new note and the check, was *ultra vires* and the debtor corporation, through the knowledge of its treasurer, is charged with notice to that effect; that the transactions of April and July, 1900, were after the complainant had gone into liquidation; that when the bank went into liquidation, its business ceased; that after that there was no authority on the part of the officers of the bank to transact any business in the name of the bank so as to bind its shareholders, unless such authority had been expressly conferred by the shareholders; that no such express authority appears in this case, and that the power of the cashier or other officer of the bank to bind it by transactions after it was put into liquidation is that which results by implication from the duty to wind up and close its affairs, and that duty consists of the collection and reduction into money of the assets of the bank and the payment to the creditors equally and ratably, so far as the assets prove sufficient; that the acts of a cashier transcending his authority are not binding upon the institution in favor of one who has notice.

The question in the first proposition submitted by the complainant's argument—"What did the parties intend?"—would be more nearly correct if it should read: "Who were the parties, and what did they intend?"

The force of the argument in support of the second proposition must be conceded in every case to which it is applicable, but it is not applicable in this case of a solvent corporation whose business is being wound up at the will and pleasure and for the benefit of a trust company which is its sole stockholder, owner of its assets, and its successor in business. The fact that the Industrial Trust Company, Pawtucket branch, did not take over the Cumberland Mills notes of October 24, 1899, and January 5, 1900, is of no consequence, the taking over being mere matter of detail that could be attended to at any time. The notes in question equitably were its property. If they

were paid to the First National Bank of Pawtucket, the proceeds would enure to the benefit of the shareholder of the bank the Industrial Trust Company, and if they were to be renewed, it could only be done, as it was done, with the knowledge and consent of the Industrial Trust Company, Pawtucket branch, and through its officers.

The old notes were taken up and paid for with checks drawn by the Cumberland Mills Company on the Industrial Trust Company, Pawtucket branch, and there is a total lack of evidence tending to show that the Industrial Trust Company ever attempted to repudiate, or even criticise, the acts of the manager of its Pawtucket branch in relation to the discount of the new notes.

The reasons given by the complainant in its attempt to differentiate the present case from the case of *Merriman* v. *Social Mfg. Co.*, 12 R. I. 175, are unsatisfactory.

The evidence convinces us that the making of the new loan to the Cumberland Mills Company was the act of the Industrial Trust Company, Pawtucket branch but even if it should be construed to be the act of the First National Bank of Pawtucket, it was valid as an exercise of power assented to by its sole stockholder.

The case is completely governed by the case of *Merriman* v. *Social Mfg. Co.*, *supra*.

The complainant having failed to substantiate its claim, the bill should be dismissed.

Cause remanded to the Superior Court, with direction to enter a decree dismissing complainant's bill of complaint with costs.

*Cyrus M. Van Slyck and Frederick A. Jones*, for complainant.
*Edwards & Angell*, for respondents.
*Albert Gerald*, of counsel.